**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERALD FUNK,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS, WILLIAM BAKER, *CI Laundry Supervisor*, MARK KNAPP, *CI Laundry Supervisor*, and PAUL SMITH, *CI Laundry Foreman*,<br><br>Defendants. | Civil Action No. 3:25-34<br><br>District Judge Stephanie L. Haines<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 22 |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

For the following reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 22, filed by Defendants Pennsylvania Department of Corrections ("DOC"), Mark Knapp ("Knapp"), William Baker ("Baker"), and Paul Smith ("Smith") be granted in part and denied in part as set forth herein.

**II.    REPORT**

**A.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Gerald Funk ("Plaintiff"), an inmate incarcerated at the State Correctional Institution at Somerset, Pennsylvania ("SCI-Somerset"), filed this action arising out of the termination of his employment in the laundry department at SCI-Somerset, raising claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and 42 U.S.C. § 1983.

1

### 1.    Alleged Facts

The factual allegations set forth in this Report and Recommendation are taken from Plaintiff's Complaint.  ECF No. 9.

On September 14, 2020, Plaintiff was assigned a job folding linens as part of the vocational training and work program at SCI-Somerset's Correctional Industries Laundry ("CI Laundry").[1] Id. at 13 ¶ 7.  In December 2020, Plaintiff was infected with COVID-19, causing "various symptoms including breathing difficulties, no taste and smell, nausea, vertigo, dizziness, fatigue, injurious muscle spasms, 'brain fog' with confusion and memory lapse and serious cognitive dysfunction."  Id. at 13 ¶¶ 10-12.  Following a paid lay-in from work for F-Block employees from mid-December 2020 to June 2021, Plaintiff returned to work at CI Laundry while still symptomatic and undergoing medical care for long COVID.  Id. at 13-14 ¶¶ 12-17.

From June 2021 through January 2022, Plaintiff continued to experience COVID symptoms but continued folding linens at CI Laundry.  Id. at 14-15 ¶¶ 18-21.  In February 2022, Smith, the CI Laundry Foreman, assigned Plaintiff the additional duties of assisting a fellow inmate handling the laundry contract for SCI-Fayette.  Id. at 15 ¶ 22.  Days later, Plaintiff informed Baker, a CI Laundry Supervisor, and Craig Schenck, the Unit Manager of F-Block, that due to his vertigo and cognitive dysfunction his only job was to fold clothes, but Plaintiff later told Baker and Smith he would test on a trial basis whether he could handle the smaller "South Mountain" laundry contract.  Id. at 15 ¶¶ 23-24.

However, by late February 2022, Funk began experiencing vertigo and other symptoms caused by repeatedly bending to load shipping carts, which he conveyed to Baker.  Baker told

---

[1]    CI Laundry is a commercial laundry business operated by the DOC at SCI-Somerset.  Id. at 12 ¶ 2.

Plaintiff to stop loading carts and return to just folding linens. Id. at 15 ¶¶ 25-26. On February 21, 2022, Plaintiff was assessed and prescribed medication for vertigo. Id. at 16 ¶ 28. On March 1, 2022, medical staff restricted him from working around moving machinery and repeated bending, restrictions that remained in place until Plaintiff had them temporarily removed in October 2022. Id. at 16 ¶ 29. Between April 2022 and February 1, 2023, Plaintiff's long COVID condition required a number of medical interventions. Id. at 16 ¶ 30.

On February 1, 2023, Baker and Smith informed inmates working at the linen folding tables that they would be assigning linen folders without a customer contract to perform "additional non-essential tasks requiring processing and loading shipping carts." Id. at 16 ¶ 31. At the end of the meeting, Plaintiff told Baker he would file a grievance if they did not continue to accommodate his inability to bend. Id. at 16 ¶ 32.

On February 7, 2023, Plaintiff was seen by medical staff, and his restriction to no repeated bending was reinstated. Id. at 17 ¶ 33. On February 9, 2023, Baker and Smith told Plaintiff they could no longer accommodate his disabilities and that he could no longer work in CI Laundry. Id. at 17 ¶ 34. When Plaintiff protested, Baker told him he could only work at CI Laundry if he removed his work restrictions. Plaintiff was terminated and placed in the SCI-Somerset general labor pool, a waiting list for unemployed inmates. Id. at 17 ¶¶ 35-36.

Plaintiff filed a grievance complaining about the discrimination but begrudgingly had his bending restriction removed. Id. at 17-18 ¶¶ 37-39. On February 17, 2023, he was reinstated at CI Laundry, and Knapp – another supervisor – confirmed that Plaintiff was only required to fold linens. Id. at 18 ¶¶ 40-41.

On March 1, 2023, Smith, Baker, and Knapp assigned Plaintiff to assist another inmate loading shipping carts, denying Plaintiff's verbal requests for a disability accommodation of no

3

bending or loading carts. Id. at 18 ¶¶ 44-45. Despite written requests and grievances, Plaintiff was forced to continue loading carts under the threat of termination until March 9, 2023. Id. at 19-20 ¶¶ 46-47. On March 9, 2023, Plaintiff was found incapacitated on the floor and taken to a Medical Emergency Response Cart and admitted into the Medical Department. Id. at 20 ¶¶ 48-49.

Plaintiff continued to experience symptoms and was not permitted to work until March 27, 2023. Id. at 20-21 ¶¶ 50-53. During that time, on March 12, 2023, Plaintiff submitted an Inmate Disability Accommodation Request Form requesting to be reinstated at CI Laundry with the accommodation of just being required to fold linens. The DOC responded by indicating that Plaintiff did have a disability but that it was already being accommodated. Id. at 21 ¶ 54.

On March 27, 2023, Plaintiff returned to work at CI Laundry with restrictions to no repeated bending, machinery, or heights from March 29 through June 30, 2023. Id. at 21 ¶ 57. On March 31, 2023, Smith, in retaliation for Plaintiff's grievances and disability accommodation requests, directed Plaintiff to work by himself all day loading carts. Id. at 22 ¶ 59. Knapp was called and directed Plaintiff to only fold linens after another inmate volunteered to load the carts. Id. at 22 ¶¶ 60-63.

From April 2023 to November 2023, Plaintiff continued to receive medical treatment for his vertigo, and his restriction to no bending was renewed. Id. at 23 ¶¶ 65-67. Despite several disputes with Smith, Baker, and Knapp, his duties at CI Laundry continued to be folding linens. Id. at 23-27 ¶¶ 68-89. From November 2023 until March 2024, however, Baker refused to allow Plaintiff to work or to make any disability accommodations. Id. at 27 ¶ 89.

On March 1, 2024, Plaintiff's work restrictions expired, and he returned to work at CI Laundry. Id. at 27-28 ¶¶ 90-91. From March 1 through May 9, 2024, Plaintiff continued to receive treatment for vertigo and only folded linens. Id. at 28 ¶¶ 92-93.

4

On May 9, 2024, Smith directed Plaintiff to switch places with another inmate and work by himself loading and unloading carts for SCI-Pine Grove. Id. at 28 ¶¶ 94-95. While in his cell after work that day, Plaintiff suffered a vertigo attack, blurred vision, dizziness, nausea, headache, and repeated vomiting. Id. at 28 ¶¶ 97-98. He filed a grievance and sought medical treatment. Id. at 28-29 ¶¶ 99-100.

Plaintiff returned to work the next day and was directed by Smith to keep loading carts for SCI-Pine Grove. Id. at 29 ¶¶ 101-02. At approximately 8:45 a.m., Plaintiff began experiencing vertigo symptoms including vomiting, and Smith was notified that Plaintiff needed medical care. Id. at 29 ¶¶ 102-03. Plaintiff informed Smith that he cannot and will not continue to load carts but offered to fold linens. Id. at 29 ¶ 103. Smith returned Plaintiff to his housing unit. Id. Baker called the housing unit staff and informed them that Plaintiff was not permitted to return to CI Laundry. Id. at 30 ¶ 105.

The following Monday, May 13, 2024, Plaintiff reported to work at CI Laundry and was ordered to leave by Baker. Id. at 30 ¶ 106. Later that day, a job-removal "Support Team Action" meeting was held at which Plaintiff was told by Baker that he could no longer work at CI Laundry because he has a disability. Id. at 30 ¶¶ 107-09. Plaintiff asserted that he had a right to an accommodation and renewed his request for an accommodation to no bending or cart loading. Id. at 30-31 ¶¶ 110-113. Unit Manager Barnett denied this request and ended the meeting. Id. at 31 ¶ 114. As of May 10, 2024, Plaintiff stopped being paid as an employee of CI Laundry. Id. at 31 ¶ 115.

On June 14, 2024, Billie Heide of DOC assigned Plaintiff to a job as a block worker cleaning microwave ovens. Id. at 33 ¶ 124. Plaintiff only earned $3.00 per day in this position compared to the $9.00 per day he earned at CI Laundry. Id. at 32-34 ¶¶ 120, 124-25. Plaintiff was

5

also excluded from industrial laundry job training and was no longer exempt from most lockdowns. Id. at 34 ¶¶ 127-28.

Throughout and after these events, Plaintiff filed a number of grievances regarding the Defendants' failure to accommodate his disabilities and the termination of his employment, including:

1. Grievance No. 1020018 on February 12, 2023;
2. Grievance No. 1024578 on March 13, 2023;
3. Grievance No. 1031305 on April 28, 2023;
4. Grievance No. 1068437 on January 8, 2024;
5. Grievance No. 1068649 on January 8, 2024;
6. Grievance No. 1069546 on January 15, 2024;
7. Grievance No. 1087751 on May 9, 2024;
8. Grievance No. 1089533 on May 21, 2024; and
9. Grievance No. 1092172 on June 9, 2024.

Id. at 42 ¶¶ 189-91, 193. Plaintiff did not file grievances in regard to the incidents on March 31, 2023, April 25, 2023, and May 22, 2023, for fear of retaliation. Id. at 42 ¶ 192.

### 2.    Procedural History

On February 5, 2025, Plaintiff filed a Motion to Proceed *In Forma Pauperis*, attaching the Complaint and exhibits. ECF No. 1. After Plaintiff cured several deficiencies in his pleading, he was granted leave to proceed *in forma pauperis*. ECF No. 8. Accordingly, on April 8, 2025, the operative Complaint was docketed. ECF No. 9.

The Complaint contains considerable detail and is 55 pages in length. It sets forth ten counts against the Defendants:

- Count One for discrimination and exclusion from services under Title II of the ADA against all Defendants;

- Count Two for discrimination and exclusion from services under Section 504 of the RA against all Defendants;

- Count Three for retaliation under the First Amendment against Baker, Knapp, and Smith (collectively the "Individual Defendants");

- Count Four for cruel and unusual punishment under the Eighth Amendment against Smith and Baker;

- Count Five for failure to protect under the Eighth Amendment against Knapp;

- Count Six for disability discrimination under the Fourteenth Amendment against the Individual Defendants;

- Count Seven for substantive due process and liberty interests under the Fourteenth Amendment against the Individual Defendants;

- Count Eight for state-created danger under the Fourteenth Amendment against the Individual Defendants;

- Count Nine for equal protection/class of one under the Fourteenth Amendment against Baker and Smith; and

- Count Ten for retaliation under the ADA against the DOC, Baker, and Smith.

Id. at 43-51 ¶¶ 196-231. The Complaint seeks declaratory judgment, compensatory damages, punitive damages, nominal damages, and all other relief the Court deems proper. Id. at 51-52.

On July 23, 2025, Defendants filed the pending Motion to Dismiss, ECF No. 22, and brief in support thereof, ECF No. 23, seeking dismissal of all claims. Plaintiff filed his Response to the Motion to Dismiss on September 3, 2025. ECF No. 32.

The Motion to Dismiss is ripe for consideration.

**B.    STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct," Ashcroft v. Iqbal, 556 U.S. 662, 678-79

7

(2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-cv-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Mergl, 2022 WL 4591394, at *3 (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878–79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)). In deciding a Rule 12(b)(6) motion, a court generally considers only the complaint, but may also consider exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based on these documents. See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Plaintiff is proceeding here *pro se*. *Pro se* pleadings and filings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance.'"). Nonetheless, "'pro se litigants still must allege sufficient facts in their complaints

8

to support a claim.'" Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).

**C.    DISCUSSION**

Defendants seek dismissal of Plaintiff's Complaint in its entirety for failure to conform with Federal Rule of Civil Procedure 8. ECF No. 23 at 3-4. They argue that the allegations in the Complaint are conclusory, rambling, and general and that they often fail to specify the acting party for a specific event. Id. They argue that the allegations are not simple, concise, and direct, as required by Rule 8, and fail to put Defendants on notice of the claims against them. Id. Plaintiff contends that the Complaint clearly specifies the factual and legal allegations against each Defendant. ECF No. 32 at 2.

The Court first notes that it is not clear that Defendants' brief, conclusory argument that the Complaint fails to comply with Rule 8 is sufficient to permit the Court to grant relief under Rule 12. See Garcia v. Cruzan Viril, Ltd., No. Civ. 23-0007, 2026 WL 412707, at *4 (D.V.I. Feb. 13, 2026). Defendants do not cite to any specific portions of the Complaint, nor do they discuss with any specificity the parts of the Complaint they allege to be deficient.

In any event, the Court finds no merit to Defendants' contentions. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requires merely that the pleadings contain "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Twombly, 544 U.S. at 556) (internal quotation marks omitted).

Plaintiff's Complaint is certainly not short, and probably not plain, but it does set forth detailed factual allegations in a sequential and logical manner in support of Plaintiff's many claims

9

for relief. At this stage of the proceedings, the Court is required to accept all non-conclusory allegations in the Complaint as true and to give Plaintiff the benefit of every favorable inference. Therefore, especially under the less stringent standard that applies to the pleading of a *pro* se litigant like Plaintiff, the Court cannot find that the Complaint fails to provide adequate notice under Rule 8. See Michael v. McIntosh, Civ. No. 2007-100, 2007 WL 3124670, at *2 (D.V.I. Oct. 9, 2007) (declining to dismiss a *pro se* complaint that was 39 pages long with 12 claims for relief and that was repetitive, cited authority from other jurisdictions, and read "somewhat like a legal treatise").

Accordingly, the Court respectfully recommends that the Complaint not be dismissed in its entirety for failure to comply with Rule 8. Therefore, the Court will address Defendants' arguments as to Plaintiff's specific counts for relief below.

### 1.   ADA (Count One)

Plaintiff brings Count One against all Defendants in their official capacities, alleging that they violated Title II of the ADA by discriminating against him based on his disabilities. ECF No. 9 at 43 ¶¶ 196-97. Specifically, he alleges that Defendants repeatedly refused to engage in the required interactive process in good faith, failed to reasonably accommodate his disabilities, and terminated his position at CI Laundry. Id.

Defendants seek dismissal of this count on multiple grounds. First, the Individual Defendants argue that Title II of the ADA does not authorize suits against individuals and that any claims against them in their official capacities are duplicative of the claim against the DOC. ECF No. 23 at 5-6. The DOC asserts that Plaintiff has failed to plead a claim against it because it consistently adhered to Plaintiff's work accommodations and continued to offer Plaintiff employment suitable for his disability. Id. at 7-8. Alternatively, it contends that actions under

Title II are barred against it under the Eleventh Amendment of the United States Constitution. Id. at 8-13. The Court will address each of these issues in turn.

### a.  Claims Against the Individual Defendants

Title II of the ADA proscribes discrimination against a "qualified individual with a disability." See 42 U.S.C. § 12132 (stating that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"). Courts have clearly held that Title II applies to state-operated correctional facilities. See Yeskey v. Pa. Dep't of Corr., 118 F.3d 168, 172 (3d Cir. 1997), aff'd sub nom., Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998).

As the Individual Defendants point out, although the United States Court of Appeals for the Third Circuit has not issued a precedential decision regarding individual liability under Title II of the ADA, that court "has approvingly cited 'decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA.'" Randolph v. Wetzel, No. 2:19-cv-790, 2021 WL 12335612, at *14 (W.D. Pa. Aug. 2, 2021), report and recommendation adopted, No. 2:19-cv-790, 2021 WL 12335611 (W.D. Pa. Aug. 25, 2021) (quoting Emerson v. Thiel Coll., 296 F.3d 184, 189 (3d Cir. 2002)). See also Montanez v. Price, 154 F.4th 127, 145 (3d Cir. 2025) (holding that state employees are not "public entities" that can be sued under Title II); Anderson v. Kauffman, No. 1:22-cv-00226, 2023 WL 4932899, at *4 (M.D. Pa. Aug. 2, 2023) (collecting cases) ("[N]early all of the Third Circuit's decisions regarding personal liability under the ADA's various titles point toward the absence of individual liability.").

11

It is therefore clear that to the extent any claims have been brought against the Individual Defendants as individuals, such claims should be dismissed. However, Plaintiff indicates that he is bringing his ADA claims against them in their official capacities.

The Third Circuit has stated that "state officers can be sued for damages in their official capacities for purposes of the ADA and RA, unless barred by the Eleventh Amendment." Durham v. Kelley, 82 F.4th 217, 224 (3d Cir. 2023). Nonetheless, such claims are duplicative where the appropriate public entity has been named as a party. See N.S. v. W. Pa. Sch. for Blind Child., No. 2:24-cv-00219, 2024 WL 4266550, at *10 (W.D. Pa. Sept. 23, 2024); Snell v. City of York, 564 F.3d 659, 664 (3d Cir. 2009) ("'[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[,]' since '[i]t is not a suit against the official personally, for the real party in interest is the entity.'") (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985) (alterations in original)).

Thus, courts have held that, "[g]enerally, the proper defendant for a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity, here the DOC." Miller v. Little, No. 22-cv-4264, 2023 WL 3674336, at *8 (E.D. Pa. May 25, 2023) (holding that "[b]ecause ADA claims asserted against individual prison officials named in their official capacities are really claims against the DOC, all ADA claims asserted against the individually-named DOC Defendants [should be dismissed] as duplicative of the claim against the DOC").

Here, Plaintiff has already named the proper party for an ADA claim – the DOC – as a Defendant. Therefore, any claims against the Individual Defendants in their official capacities under the ADA would be duplicative. Accordingly, the Court recommends that Count One of the Complaint be dismissed as to the Individual Defendants.

### b.    Claim Against the DOC

As for Plaintiff's ADA claim against the DOC, as noted, the DOC seeks dismissal of Count One on several grounds, but the Court must first address the issue of Eleventh Amendment immunity.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Thus, the Eleventh Amendment generally bars a suit in federal court against a state, or a department or agency of the state having no existence apart from the state as a defendant. Edelman v. Jordan, 415 U.S. 651, 663 (1974); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citing Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). The DOC is an administrative department of the Commonwealth of Pennsylvania. See 71 P.S. § 61 (naming the DOC as an administrative department of the Commonwealth); Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000). As such, the DOC is entitled to the same Eleventh Amendment immunity as Pennsylvania would enjoy.

There are two exceptions to the Eleventh Amendment's bar to suits against states. First, a state may waive its sovereign immunity by consenting to suit. Second, Congress may authorize such suits pursuant to its power to enforce the Fourteenth Amendment. See Koslow v. Com. of Pa., 302 F.3d 161, 168 (3d Cir. 2002). Pennsylvania has specifically withheld consent to suit in federal courts. 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Therefore, the Court must determine

whether Congress has authorized suits under Title II of the ADA pursuant to its power to enforce the Fourteenth Amendment.

Title II of the ADA clearly purports to do so. See 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."). See also Durham, 82 F.4th at 228 ("Under Title II of the ADA, … [t]here is thus an adequate expression of Congress's intent to abrogate a State's Eleventh Amendment immunity."). Therefore, Congress has unequivocally stated its intent to abrogate Eleventh Amendment immunity for Title II claims.

The question then becomes whether Congress acted pursuant to a valid grant of authority pursuant to the Fourteenth Amendment in abrogating this immunity. This question was answered by the United States Supreme Court in United States v. Georgia, where the Supreme Court held that Title II of the ADA abrogates state sovereign immunity when it comes to state conduct that violates the Constitution. See 546 U.S. 151, 159 (2006). In determining whether conduct is subject to such abrogation, courts in the Third Circuit use a three-step analysis:

> (1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 (3d Cir. 2007). If a claim alleges a violation of Title II of the ADA but not the Fourteenth Amendment, the court must determine whether there is "'a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" Tennessee v. Lane, 541 U.S. 509, 520 (2004) (quoting City of Boerne v. Flores, 521 U.S. 507, 520 (1997)). See also Shaw v. Pa. Dep't of Corr., No. 17-229-E, 2018 WL 6831148, at *5 (W.D. Pa. Dec. 28, 2018).

At Count One, Plaintiff alleges that the DOC failed to accommodate his disabilities and ultimately removed him from his position at CI Laundry. Courts have found that allegations of removal or exclusion from a prison job because of disability are sufficient to plead a violation of Title II of the ADA for purposes of this analysis. See Shaw, 2018 WL 6831148, at *5; Belk v. Smith, No. 1:10-cv-724, 2013 WL 5430426, at *5 (M.D.N.C. Sept. 27, 2013); Castle v. Eurofresh, Inc., Civ. No. 09-8114, 2011 WL 53063, at *10 (D. Az. Jan. 7, 2011).[2] Thus, Plaintiff has identified conduct violative of Title II under the first element of the Bowers test.

However, the conduct identified in Count One does not also violate the Fourteenth Amendment. Courts have consistently declined to find any constitutionally protected right to prison work or vocational training. See Fountain v. Vaughn, 679 F. App'x 117, 120 (3d Cir. 2017) "[Plaintiff's] claim related to his loss of prison employment is not cognizable under the Due Process Clause."); James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989) (finding that inmates do not have a constitutionally protected liberty or property interest in a prison job assignment); Watson v. Sec'y Pa. Dep't of Corr., 567 F. App'x 75, 78 (3d Cir. 2014); Presbury v. Wenerowicz, 472 F. App'x 100, 101 (3d Cir. 2012). Further, neither the disabled nor prison inmates constitute

---

[2]    Indeed, "the phrase 'service, program, or activity' under Title II ... is 'extremely broad in scope and includes anything a public entity does.'" Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 289 (3d Cir. 2019) (quoting Disability Rights N.J., Inc. v. Comm'r N.J. Dep't of Hum. Servs., 796 F.3d 293, 301 (3d Cir. 2015)). Therefore, a prison's refusal to accommodate an inmate's disabilities in "virtually all ... prison programs" qualifies as a denial of the benefits of the prison's services, programs, or activities under Title II. Graziano v. Pa. Dep't of Corr., No. 1:22-cv-00163, 2023 WL 6389756, at *29 (W.D. Pa. Sept. 30, 2023) (quoting Brown v. Monsalud, No. 1:20-cv-849, 2021 WL 4502238, at *3 (M.D. Pa. Sept. 30, 2021). This would logically include a prison work program.

a suspect class for purposes of a due process analysis. Shaw, 2018 WL 6831148, at \*5; Baxter v. Pa. Dep't of Corr., No. 3:14-cv-126, 2016 WL 1165977, at \*3 (W.D. Pa. Mar. 7, 2016).

Therefore, the conduct alleged by Plaintiff violates Title II of the ADA but not the Fourteenth Amendment. Such a situation requires the Court to determine whether there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." Lane, 541 U.S. at 520. In making this determination, the Court applies the three-part analysis set forth in Boerne. Pursuant to this test, the Court must: (1) identify "with some precision the scope of the constitutional right at issue;" (2) examine whether Congress has identified a history and pattern of unconstitutional discrimination by the states; and (3) determine whether the rights and remedies created by Title II are congruent and proportional to the constitutional issues sought to be prevented. Id. at 529.

In performing this analysis, the Court finds abrogation to be unwarranted. For the first part of the Boerne analysis, the Court has determined that the precise right at issue here is the right of an inmate with a disability to prison employment. See Shaw, 2018 WL 6831148, at \*5; Baxter, 2016 WL 1165977, at \*3. The Court therefore moves on to second and third elements of the test.

As to the second consideration under Boerne, the Court finds that Congress has identified a history and pattern of unconstitutional discrimination by the states with respect to the right at issue. In Cochran v. Pinchak, 401 F.3d 184 (3d Cir. 2005), the Third Circuit, in finding that violations of Title II of the ADA satisfy this consideration, noted that it was bound by the Supreme Court's holding in Lane that "Title II in its entirety satisfied Boerne's step-two requirement that it be enacted in response to a history and pattern of States' constitutional violations." Id. at 191. Although the decision in Cochran was vacated pending the Supreme Court's decision in Georgia, this aspect of the Third Circuit's analysis was undisturbed. Courts have therefore generally

followed <u>Cochran</u> in finding that Title II of the ADA satisfies the second prong of the <u>Boerne</u> test. See <u>Shaw</u>, 2018 WL 6831148, at *5; <u>Baxter</u>, 2016 WL 1165977, at **3-4.

The Court nonetheless agrees with the courts that have found that the rights and remedies created by Title II are not congruent and proportional to the pattern of disability discrimination identified by Congress. See <u>Cochran</u>, 401 F.3d at 192-93 ("The ADA affects far more state prison conduct and prison services, programs, and activities than the Equal Protection Clause protects."); <u>Shaw</u>, 2018 WL 6831148, at *6; <u>Baxter</u>, 2016 WL 1165977, at *4. As the court explained in <u>Belk</u>:

> Permitting Title II to abrogate state sovereign immunity as to prisoners seeking only prophylactic enforcement of their right to be free from irrational disability discrimination would impose a significantly greater cost to federalism than permitting a similar suit in the context of higher education. It would convert services that had been offered purely as a matter of grace into vehicles for liability, and it would do so in the context of a system in which states have significantly more leeway in restricting individuals' constitutional rights.

2013 WL 5430426, at *9 (internal citations omitted).

The Court therefore finds that Pennsylvania's Eleventh Amendment immunity as to monetary damages has not been abrogated by Title II of the ADA as it applies to Plaintiff's employment at CI Laundry.[3] As such, the Court respectfully recommends that Defendants' Motion to Dismiss be granted as to Count One and that Count One be dismissed in its entirety.[4]

### 2.   Rehabilitation Act (Count Two)

Plaintiff also brings Count Two under Section 504 of the RA against all Defendants in their official capacities. ECF No. 9 at 43 ¶¶ 198-99. This claim is essentially the same as Plaintiff's

---

[3]   The Complaint does not seek any prospective injunctive relief. ECF No. 9 at 51-52.

[4]   As further discussed below, this analysis and recommendation apply only to Plaintiff's ADA claims set forth at Count One, *i.e.*, his claims regarding Defendants' failure to accommodate his disabilities and his resulting termination. It does not apply to Plaintiff's ADA retaliation claim set forth at Count Ten.

claim at Count One under the ADA, and Defendants seek to dismiss Count Two for mostly the same reasons as they asserted as to Count One.

### a.    Claims Against the Individual Defendants

Like Title II of the ADA, the RA prohibits discrimination against a "qualified individual with a disability." See 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). Section 504 of the RA applies to state operated correctional facilities. Yeskey, 118 F.3d at 172.

Just like Title II, the case law indicates that individuals cannot be liable under Section 504 of the RA. See Randolph, 2021 WL 12335612, at *14; Montanez, 154 F.4th at 145; Anderson, 2023 WL 4932899, at *4. Accordingly, Plaintiff's RA claims against the Individual Defendants fail for the same reasons his ADA Title II claims fail to the extent they seek to hold these defendants individually liable. As to his claims against the Individual Defendants in their official capacities, as with his ADA claims, such claims are duplicative of his claim at Count Two against the DOC and should be dismissed. See N.S., 2024 WL 4266550, at *10; Miller, 2023 WL 3674336, at *8.

Therefore, the Court respectfully recommends that Count Two be dismissed as to the Individual Defendants.

### b.    Claim Against the DOC

The DOC does not assert any Eleventh Amendment immunity in regard to Plaintiff's RA claim against it, and such an assertion would fail in any event, as Pennsylvania has waived its immunity against Section 504 suits by accepting federal funds for the DOC. See Koslow, 302 F.3d at 170-72. The DOC does, however, argue that Count Two should be dismissed because

Plaintiff failed to plead a violation of the RA, emphasizing that Plaintiff was provided with work accommodations and ultimately a new work placement. ECF No. 23 at 13.

The same substantive standards govern claims under Section 504 of the RA as govern claims under Title II of the ADA. See Furgess, 933 F.3d at 288. To state a Section 504 claim, therefore, a plaintiff "must allege that he is a qualified individual with a disability who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination by reason of his disability." Id. at 288-89. See also Bowers, 475 F.3d at 533. To seek compensatory damages, which Plaintiff here does, intentional discrimination under a deliberate indifference standard must be shown. See Furgess, 933 F.3d at 289.

As with the ADA, "the phrase ... 'program or activity' under Section 504 is 'extremely broad in scope and includes anything a public entity does.'" Id. at 289. Therefore, a prison's refusal to accommodate an inmate's disabilities in "virtually all ... prison programs" qualifies as a denial of the benefits of the prison's programs or activities under Section 504. Graziano, 2023 WL 6389756, at *29. See also Small v. Lanigan, Civ. No. 13-7642, 2019 WL 145628, at *4 (D.N.J. Jan. 9, 2019). Again, this would logically include a prison work program. See Shaw, 2018 WL 6831148, at *5.

The DOC does not deny that Plaintiff is a qualified individual with a disability, but rather argues that it did provide any necessary accommodations and even provided him with a comparable position after he could no longer work at CI Laundry. However, Plaintiff, as discussed above, argues that the DOC failed to consistently respect his disability-related work restrictions and that his reassignment to block worker resulted in him making less money, having fewer privileges, and no longer receiving the occupational training that he wants. ECF No. 9 at 33-34 ¶¶ 124-28.

19

Under the RA, "[r]efusing to make reasonable accommodations is tantamount to denying access." Durham, 82 F.4th at 226. The DOC may factually dispute whether that is what happened here, but it is clear that Plaintiff has alleged that reasonable accommodations were not adhered to, leading to his discharge from CI Laundry. At the Rule 12 stage, Plaintiff has sufficiently alleged a Section 504 claim.

Accordingly, the Court respectfully recommends that Defendants' Motion to Dismiss be denied as to Count Two as it pertains to the DOC.

### 3.   First Amendment Retaliation (Count Three)

At Count Three, Plaintiff brings a claim against the Individual Defendants in their individual capacities alleging that they retaliated against him for exercising his rights under the First Amendment. ECF No. 9 at 44 ¶¶ 200-01. He asserts that the Individual Defendants engaged in retaliatory conduct in response to his assertion of his disability rights, his requests for accommodation, and his filing of grievances and of this lawsuit. Id. He alleges that this included threats, harassment, intimidation, assignment of work they knew he could not perform, and ultimately ending his job at CI Laundry. Id.

The Individual Defendants contend that Plaintiff has failed to allege that he experienced an adverse action as a result of engaging in the protected conduct. ECF No. 23 at 15-17. They further assert that Plaintiff has failed to adequately allege any personal involvement by any of the Individual Defendants. Therefore, they argue that this claim should be dismissed. Id. Plaintiff counters by arguing that his filing of grievances constituted protected activity and that his termination from CI Laundry was an adverse action caused by this protected activity. He further argues that each of the Individual Defendants were aware of and reacted to his filing of grievances, citing to specific paragraphs in the Complaint. ECF No. 32 at 12-13, 18-20.

20

Plaintiff brings his claim for the violation of his rights under the First Amendment pursuant to 42 U.S.C. § 1983. This statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. To state a claim under Section 1983, a plaintiff must allege facts sufficient to establish "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Section 1983, by its own terms, creates no substantive rights, but rather provides a means for plaintiffs to seek relief for the deprivation of rights established by the Constitution or federal laws. See Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

To plead a *prima facie* claim for retaliation under the First Amendment, a plaintiff must allege: (1) that "the conduct which led to the alleged retaliation was constitutionally protected"; (2) that "he suffered some 'adverse action' at the hands of the prison officials" that "'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights'"; and (3) a "causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). If the plaintiff makes this initial showing, "the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct

21

for reasons related to a legitimate penological interest." <u>DeFranco v. Wolfe</u>, 387 F. App'x 147, 154-55 (3d Cir. 2010) (citing <u>Rauser</u>, 241 F.3d at 334).[5]

Generally, the filing of grievances constitutes constitutionally protected activity satisfying the first element of a *prima facie* case. <u>See</u> <u>Laurenzau v. Romarowics</u>, 528 F. App'x 136, 139 (3d Cir. 2013); <u>Pepe v. Lamas</u>, 679 F. App'x 173, 175 (3d Cir. 2017) (citing <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003)).[6]  As Plaintiff has alleged that he filed no less than nine grievances related to his employment with CI Laundry, he has sufficiently alleged that he engaged in protected activity.

The Individual Defendants argue, though, that he has not adequately pled the second element of a *prima facie* case, *i.e.*, that he suffered an adequate adverse action.  An adverse action is one sufficient to "deter a person of ordinary firmness from exercising his First Amendment rights." <u>Allah</u>, 229 F.3d at 225 (internal quotations and citations omitted).  The Individual Defendants assert that Plaintiff's allegation that his employment at CI Laundry was terminated is insufficient because he was transferred to a different job where he was given similar pay and benefits. ECF No. 23 at 17.  Plaintiff, however, as discussed above, argues that as a result of being reassigned he makes less money, has fewer privileges, and is no longer receiving the occupational training that he wants.  ECF No. 9 at 33-34 ¶¶ 124-28.

---

[5]    The Individual Defendants do not identify any specific legitimate penological interest that would have led to the same decision to remove Plaintiff from CI Laundry.  Regardless, as this is an affirmative defense, the burden of pleading such an interest is on the Defendants; it is not Plaintiff's burden to plead the lack of such an interest. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 212 (2007).

[6]    However, mere threats to file grievances and/or lawsuits do not qualify as constitutionally protected activity. <u>See</u> <u>Griffin-El v. Beard</u>, Civ. No. 06-2719, 2013 WL 228098, at *8 (E.D. Pa. Jan. 22, 2013); <u>Clay v. Overmyer</u>, No. 1:14-cv-103, 2015 WL 630379, at *4 (W.D. Pa. Feb. 13, 2015).

As discussed above, the Individual Defendants are correct that "[a]n inmate does not have a constitutionally protected interest in a prison job assignment." James, 866 F.2d at 629-30. However, "a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied." Rauser, 241 F.3d at 333. Therefore, the loss of a prison work assignment can support a claim of retaliation. See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017). For such loss to constitute an adverse action, "an inmate must have been removed from his job, or the job reassignment must carry with it a negative impact such as a lower pay, a less interesting environment or less favorable work conditions that could deter a prisoner of ordinary firmness from exercising their First Amendment rights." Manning v. Flock, No. 1:11-cv-293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (citing Mitchell, 318 F.3d at 530).

As discussed, Plaintiff does allege that his new position as a block worker cleaning microwave ovens offers less pay, provides fewer privileges, and does not permit the type of occupational training he seeks. Such a claim is therefore sufficient to satisfy Plaintiff's requirement to plead an adverse action at this phase of the proceedings.[7]

Finally, the Individual Defendants argue that Plaintiff has failed to plead that they were aware of Plaintiff's protected speech or that they were personally involved in any retaliatory conduct. ECF No. 23 at 17. However, Plaintiff does, throughout his very detailed Complaint, allege that Knapp, Baker, and Smith were aware of the various grievances he filed and that one or more of them routinely took actions – such as disregarding his established work accommodations

---

[7]    However, "verbal harassment does not constitute adverse action for purposes of a First Amendment retaliation claim." Baez v. Froehlich, No. 1:20-cv-0148, 2021 WL 4341191, at *5 (W.D. Pa. Sept. 23, 2021). See also Burkholder v. Newton, 116 F. App'x 358, 360 (3d Cir. 2004). To the extent Plaintiff alleges verbal harassment as part of the adverse actions to which he was subjected, such allegations in and of themselves would not satisfy the second criteria of a *prima facie* case.

– in response to his filing of the grievances.  ECF No. 9 at 18-19 ¶¶ 38, 41, 43-46; at 21-22 ¶¶ 54-59; at 24-25 ¶¶ 71-72; at 29-31 ¶¶ 100-02, 106-115; at 37 ¶¶ 148.  The Individual Defendants' argument that Plaintiff has failed to plead their knowledge or personal involvement is without merit.

Plaintiff argues that this pattern of conduct satisfies the third essential element of a retaliation claim – that there be a causal link between the exercise of his constitutional right and the adverse action taken against him.  ECF No. 32 at 18.

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (internal citations omitted).  The retaliatory action constituting the adverse action here, Plaintiff's termination from CI Laundry, occurred on May 13, 2024, four days after Plaintiff had filed one of his grievances.  ECF No. 9 at 29-31 ¶¶ 100-02, 106-115.  This timing is at least arguably suggestive, and, as discussed above, could be construed as part of an alleged pattern of antagonism bearing a temporal relationship with Plaintiff's filing of other grievances.  Accordingly, the Court finds that, at this point in the proceedings, Plaintiff has adequately pled causation.

As such, the Court respectfully recommends that Defendants' Motion to Dismiss be denied as to Count Three.

### 4.    Eighth Amendment Cruel and Unusual Punishment (Count Four)

At Count Four, Plaintiff alleges that Smith and Baker, in their individual capacities, violated his Eighth Amendment right to be free of cruel and unusual punishment by denying him humane conditions of imprisonment.  Id. at 44 ¶¶ 203-05.  He claims that Smith and Baker

compelled him to perform physical labor beyond his capabilities despite their knowledge of his impairments and limitations. Id.

Smith and Baker seek dismissal of this count, arguing that Plaintiff has failed to sufficiently plead that he was denied the minimal civilized measure of life's necessities. They contend that merely being deprived of his job at CI Laundry is insufficient to support such a claim. ECF No. 23 at 18-21. Plaintiff responds by alleging that Smith and Baker acted with reckless disregard and deliberate indifference to his health and safety "by compelling him to perform bending-intensive, debilitating and/or incapacitating cartloading that they unquestionably knew is [beyond] his disability/physical limitation." ECF No. 32 at 21.

As the Supreme Court has held, "[t]he Constitution 'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). However, prison officials are required to "provide humane conditions of confinement," and must take "reasonable measures to guarantee the safety of inmates." Id. (citations omitted). Where, as here, an inmate challenges the conditions of his confinement under the Eighth Amendment, the relevant inquiry is whether the inmate has been deprived of the "minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. See also Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).

For prison officials to have violated the Eighth Amendment: "(1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer, 511 U.S. at 834). "An official is deliberately indifferent if he 'knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511

U.S. at 837). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Knox v. Doe, 487 F. App'x 725, 727 (3d Cir. 2012) (quoting Farmer, 511 U.S. at 835).

As Smith and Baker correctly assert, the loss of a prison job does not constitute the deprival of one of life's necessities. See Watson v. Sec'y Pa. Dep't of Corr., 567 F. App'x 75, 78 (3d Cir. 2014); Fountain, 679 F. App'x at 120 n.2. Prisoners, in fact, have no constitutionally protected interest in a prison job. See Watson, 567 F. App'x at 78; Fountain, 679 F. App'x at 120; Presbury v. Wenerowicz, 472 F. App'x 100, 101 (3d Cir. 2012). To the extent, therefore, that Plaintiff alleges that losing his job in CI Laundry supports his claim, such an allegation would fail to properly plead a sufficient deprivation of life's necessities to implicate the Eighth Amendment.

Plaintiff further argues, though, that he was compelled under threat of disciplinary action to perform labor that was unsafe given his disabilities and contrary to medical restrictions, specifically loading shipping carts. He alleges that Smith and Baker knew of his disability-related limitation to no repeated bending and yet they, on multiple occasions, "compel[led] Plaintiff under threat of disciplinary actions" to perform such tasks anyway. ECF No. 9 at 44 ¶ 204. He further alleges that they knew the conduct they were directing him to perform induced the severe effects of his vertigo. Id.

Court have that recognized that "the Eighth Amendment is implicated in the prison work context ... when a prisoner employee alleges that a prison official [1] compelled him to 'perform physical labor which [was] beyond [his] strength, [2] endanger[ed his life] or health, or [3] cause[d] undue pain.'" Petry v. Beard, No. 3:09-cv-2312, 2011 WL 1398476, at *10 (M.D. Pa. Apr. 13, 2011) (quoting Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994)). See also Johnson v.

Townsend, 314 F. App'x 436, 440 (3d Cir. 2008). Plaintiff's allegation that he was compelled to perform such work at the risk of discipline clearly invokes the Eighth Amendment.

Plaintiff does claim that he risked losing his job at CI Laundry if he did not perform the additional tasks assigned by Smith and Baker, but his allegations, as explained, go well beyond that. At this initial stage, such averments are sufficient to support an Eighth Amendment Section 1983 claim. Therefore, the Court respectfully recommends that Defendants' Motion to Dismiss be denied as to Count Four.

### 5. Eighth Amendment Failure to Protect (Count Five)

Plaintiff brings another Eighth Amendment claim at Count Five, this time against Knapp, in both his official and individual capacity, for failure to protect him. ECF No. 9 at 45-46 ¶¶ 206-11. He alleges that Knapp knew about Plaintiff's work restrictions and had the authority and a duty to protect him from being assigned tasks he could not perform. Id.

Knapp argues that Plaintiff fails to plead his personal involvement in any violative conduct and that the count thus must be dismissed. ECF No. 23 at 21-22. Plaintiff reasserts his allegations in the Complaint that Knapp was aware of the work duties being imposed by Smith and Baker and failed to intervene to protect him. ECF No. 32 at 22-23.

A failure to protect claim against a supervisor under Section 1983 can be established if the plaintiff shows that the supervising official tolerated past or ongoing misbehavior from subordinate officers. See Argueta v. U.S. Immigr. & Customs Enf't, 643 F.3d 60, 72 (3d Cir. 2011) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1191 n.3 (3d Cir. 1995)). To state a plausible Eighth Amendment failure to protect claim against a prison official, an inmate must plead facts sufficient to show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the official was deliberately indifferent to that substantial risk to his health and safety; and (3)

the official's deliberate indifference caused him harm. <u>Bistrian v. Levi</u>, 696 F.3d 352, 367 (3d Cir. 2012), <u>abrogated on other grounds by</u>, <u>Mack v. Yost</u>, 968 F.3d 311 (3d Cir. 2020). Similarly, to state a failure to intervene claim, an inmate must demonstrate that "(1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable opportunity to intervene.'" <u>Knight v. Walton</u>, No. 12-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting <u>Smith v. Mensinger</u>, 293 F.3d 641, 651 (3d Cir. 2002)).

As discussed above, the Court has found that Plaintiff has pled a plausible Eighth Amendment claim against Smith and Baker. While Knapp asserts that Plaintiff has failed to adequately allege that he was sufficiently aware that Smith and Baker's conduct created a substantial risk of serious harm or that he was deliberately indifferent as to any such risk, the Complaint provides otherwise. Therein, Plaintiff alleges that Knapp discussed Plaintiff's accommodations with him after the filing of his first grievance and that Knapp was aware of the multiple times Smith and Baker assigned work without regard to these accommodations. ECF No. 9 at 18-19 ¶¶ 41-46; at 22 ¶ 62; at 24-25 ¶¶ 71-72. At this stage, this is adequate to plead that Knapp had knowledge that Plaintiff was being forced to do work incompatible with his physical limitations and failed to intervene or protect Plaintiff.

Accordingly, it is recommended that Defendants' Motion to Dismiss be denied as to Count Five.

### 6.    Fourteenth Amendment Claims (Counts Six through Eight)

At Counts Six, Seven, and Eight, Plaintiff brings various Section 1983 claims against the Individual Defendants in their official and individual capacities for violating his rights under the Fourteenth Amendment. At Count Six, Plaintiff alleges that the Individual Defendants engaged in

28

disability discrimination in violation of the Fourteenth Amendment.  ECF No. 9 at 46-47 ¶¶ 212-15.  At Count Seven, he asserts that they violated his liberty interest rights in human dignity, safety, and bodily integrity protected by substantive due process under the Fourteenth Amendment.  Id. at 47-48 ¶¶ 216-18.  At Count Eight, he claims that the Individual Defendants engaged in conduct establishing a state-created danger in violation of his Fourteenth Amendment rights.  Id. at 48 ¶¶ 219-21.

The Individual Defendants seek dismissal of each of these counts, arguing that the claims contained therein are based on the same factual allegations underlying Plaintiff's more specific ADA, RA, and Eighth Amendment claims.  They assert, therefore, that the claims are barred by the "more specific provision rule."  ECF No. 23 at 22-24.  They further state that Plaintiff has neither a liberty nor a property interest that would implicate due process.  Id.  Plaintiff argues that the Fourteenth Amendment provides an avenue of relief independent from the ADA, RA, or Eighth Amendment.  ECF No. 32 at 23-24.

The Court has already explained that the alleged discrimination by the Individual Defendants, although it might raise an ADA Title II claim, is not sufficient to adequately allege a due process violation under the Fourteenth Amendment.  As such, Count Six should be dismissed.

Count Seven contains allegations that the Individual Defendants violated Plaintiff's liberty interest rights in human dignity, safety, and bodily integrity protected by substantive due process.  As discussed herein, to the extent that Plaintiff is arguing that the loss of his position at CI Laundry implicates due process, inmates have no constitutionally protected liberty or property interest in a particular prison job assignment.  See James, 866 F.2d at 629-30.

To the extent that the liberty interest at issue pertains to the conditions of his confinement generally, e.g., the assignment of duties beyond his job restrictions, the Individual Defendants are

correct that the more specific provision rule applies. As the Supreme Court has explained, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994).

> Noting its "reluctan[ce] to expand the concept of substantive due process," the Supreme Court has established the "more-specific-provision rule." County of Sacramento v. Lewis, 523 U.S. 833, 843-44, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998). Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L.Ed.2d 432 (1997) . . . .

Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010). Observing that the plaintiff's allegations "fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment," the court in Betts held that the plaintiff's due process claims were foreclosed by the more specific provision rule. Id. at 261. Courts have routinely dismissed Fourteenth Amendment claims where addressing them would be duplicative of analyzing the plaintiff's claims under the more particular amendment language. See, e.g., Goldhaber v. Higgins, 576 F. Supp. 2d 694, 727 (W.D. Pa. 2007); Rosado v. Virgil, Civ. No. 09-156-E, 2011 WL 4527067, at *6 (W.D. Pa. Sept. 28, 2011); Navolio v. Lawrence Cnty., Civ. No. 08-1286, 2010 WL 522331, at *9 (W.D. Pa. Feb. 9, 2010), aff'd, 406 F. App'x 619 (3d Cir. 2011); Granberry v. Chairman of Pa. Bd. of Prob. & Parole, Civ. No. 07-272-E, 2010 WL 486593, at *5 (W.D. Pa. Feb. 5, 2010), aff'd, 396 F. App'x 877 (3d Cir. 2010).

"In accordance with this rule, an inmate's 'claim concern[ing] his conditions of confinement and an alleged failure by the Defendants to ensure his safety ... fit squarely within the

30

Eighth Amendment's prohibition on cruel and unusual punishment.'" Ceasar v. Varner, No. 1:21-cv-00323, 2022 WL 9491877, at *7 (W.D. Pa. Oct. 14, 2022) (quoting Scott v. Clark, No. 1:19-cv-00169, 2020 WL 4905624, at *7 (W.D. Pa. July 28, 2020)).  "Therefore, any claim for inhumane conditions of confinement brought under the Fourteenth Amendment Substantive Due Process Clause must be dismissed." Rush v. Wetzel, No. 1:21-cv-316, 2023 WL 3456921, at *3 (W.D. Pa. Apr. 12, 2023), report and recommendation adopted, No. 1:21-cv-316, 2023 WL 3456665 (W.D. Pa. May 15, 2023). See also B.L. v. Lamas, No. 3:15-cv-1327, 2017 WL 592226, at *2 (M.D. Pa. Feb. 14, 2017).

Plaintiff's claims regarding his work at CI Laundry, or his prison conditions generally, are likewise covered by the more specific Eighth Amendment and are appropriately analyzed under the standards of that amendment.  The Court has done just that as to Plaintiff's claims at Counts Four and Five.

Count Eight, which purports to raise a state-created danger claim, fails for the same reason. A state-created danger claim is a variety of substantive due process claim.  See Est. of Viola v. Twp. of Bensalem, 96 F. Supp. 3d 466, 469 (E.D. Pa. 2015) (citing Sanford v. Stiles, 456 F.3d 298, 304 (3d Cir. 2006)).  Therefore, as with other due process claims, the more specific provision rule applies.  See Beenick v. LeFebvre, 684 F. App'x 200, 205 (3d Cir. 2017) (holding that the district court properly dismissed plaintiff's state-created danger claim based on defendants' alleged failure to ensure his safety while working in prison pursuant to the more specific provision rule); Gearhart v. Pa. Dep't of Corr., No. 3:22-cv-01334, 2023 WL 6216715, at *4 (M.D. Pa. Sept. 25, 2023) ("But in the prison context, where conditions-of-confinement claims are governed by Eighth Amendment standards, Fourteenth Amendment substantive due process claims concerning conditions of confinement are barred by the more-specific-provision rule.").

Therefore, the Court recommends that Defendants' Motion to Dismiss be granted as to Counts Six, Seven, and Eight and that these counts be dismissed.

### 7.    Fourteenth Amendment/Class of One (Count Nine)

At Count Nine, Plaintiff claims that Baker and Smith, in their individual capacities, violated his rights under the equal protection clause of the Fourteenth Amendment. ECF No. 9 at 49 ¶¶ 222-225. Specifically, he alleges that Baker and Smith irrationally singled him out for purposeful discrimination and treated him differently than other disabled or non-disabled similarly situated inmates who were unable to perform a specific labor because of physical impairments, injuries, or other conditions. Id. He purports to proceed under a theory known as a "class of one." Id.

Defendants seek dismissal of Count Nine, arguing that Plaintiff has failed to adequately allege that he was treated differently than other class members. ECF No. 23 at 24. They further contend that he fails to identify such similarly situated inmates or state specific facts regarding Baker and Smith's state of mind. Id. Plaintiff counters that he pointed out in the Complaint how Baker and Smith treated him differently than they did other inmates. ECF No. 32 at 25-26.

To state an equal protection violation under a class of one theory, a plaintiff "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). At the motion to dismiss stage, a plaintiff must allege facts sufficient to make plausible the existence of such similarly situated parties. See Perano v. Twp. of Tilden, 423 F. App'x 234, 238 (3d Cir. 2011). "[A]n equal-protection challenge must allege more than 'broad generalities' in identifying a comparator." Stradford v. Sec'y Pa. Dep't of Corr., 53 F.4th 67, 74 (3d Cir. 2022) (quoting Griffin Indus., Inc. v. Irvin, 496 F.3d 1189,

1204 (11th Cir. 2007)).  To be "similarly situated," parties must be alike "in all relevant aspects."

Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008).

> When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations ... that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] ... were treated in a dissimilar manner" will not survive dismissal.

Green v. Klinefetter, No. 3:16-cv-2367, 2017 WL 3401290, at *4 (M.D. Pa. Aug. 8, 2017) (quoting

Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005)).

Contrary to Plaintiff's contentions, he falls far short of meeting this pleading standard. Indeed, despite its considerable length, the Complaint does not identify any specific individuals treated differently, much less set forth facts showing that their situations were like Plaintiff's in all relevant respects.  In fact, to the contrary, Plaintiff states in the Complaint that at a February 1, 2023 meeting, Baker and Smith informed inmates working at the linen folding tables generally – not just Plaintiff – that they would be assigned additional tasks requiring processing and loading shipping carts unless they also had a customer contract.  ECF No. 9 at 16 ¶ 31.  This actually raises an inference that Plaintiff was not treated differently.  Overall, Plaintiff does not come close to adequately pleading a class of identifiable people irrationally treated differently than him.

It is not clear that a class of one theory can even be applied in a case such as this, given the nature of the alleged conduct here.  As the Supreme Court has explained:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a

33

particular person would undermine the very discretion that such state officials are entrusted to exercise.

Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 603 (2008) (holding that the class of one theory does not apply in the employment context). While it is not necessary to determine whether a class of one theory could be applicable in a case such as the instant one, the nature of the allegations here underscore the fact that Plaintiff's vague assertion of the existence of similarly situated individuals does not begin to account for the numerous relevant distinctions between Plaintiff's situation and those of these hypothetical other people.

Accordingly, it is recommended that Defendants' Motion to Dismiss be granted as to Count Nine and that Plaintiff's equal protection/class of one claim be dismissed.

### 8.    ADA Retaliation (Count Ten)

Finally, at Count Ten, Plaintiff brings a claim against the DOC and against Baker and Smith in both their official and individual capacities alleging that they retaliated against him for opposing their unlawful acts under the ADA, in violation of 42 U.S.C. § 12203. ECF No. 9 at 49-51 ¶¶ 226-31. He asserts that they engaged in retaliatory conduct in response to his assertion of his disability rights and his filing of grievances. Id. He alleges that this included threats, harassment, intimidation, assignment of work they knew he could not perform, and ultimately ending his job at CI Laundry. Id.

Except to the extent that they seek dismissal of this count as part of their general argument that the Complaint as a whole fails to comply with Federal Rule of Civil Procedure 8 as discussed above, Defendants do not set forth any specific basis for dismissing Count Ten. In fact, they do not address it at all. ECF No. 23. Since the Court has already declined to dismiss this count as part of a general dismissal of the Complaint under Rule 8, it has no basis to recommend dismissal

34

on any other grounds. Therefore, the Court respectfully recommends that Defendants' Motion to Dismiss be denied as to Count Ten.[8]

### D. Amendment

If a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. See Grayson v. Mayview St. Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Budhun v. Reading Hosp. & Med. Cntr., 765 F.3d 245, 259 (3d Cir. 2014). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun, 765 F.3d at 259.

For the reasons discussed, the Court finds that Plaintiff has adequately pled claims at Count Two against the DOC and at Counts Three, Four, Five, and Ten. No amendment, accordingly, is needed in regard to those counts. As to Count One and Count Two against the Individual Defendants, the issues are legal in nature involving individual liability and Eleventh Amendment immunity. Such issues are not susceptible to being cured merely through an amended pleading. The claims at Counts Six, Seven, and Eight were improperly brought under the Fourteenth Amendment, and amending the Complaint would not alter that. Only Count Nine, where Plaintiff failed to adequately plead a class of one equal protection claim, could conceivably be cured by amendment. It seems unlikely that Plaintiff could allege facts sufficient to support such a claim, but the Court cannot say that giving him the opportunity to try would be futile.

---

[8] The Court is cognizant that it has addressed issues of individual liability and Eleventh Amendment immunity in regard to Plaintiff's failure to accommodate claim under Title II of the ADA in recommending dismissal of Count One. However, given the different language and context of Section 12203, the Court's analysis of these issues could differ significantly in regard to a retaliation claim under the ADA. See, e.g., Zied-Campbell v. Richman, No. 1:04-cv-00026, 2007 WL 1031399, at *18 (M.D. Pa. Mar. 30, 2007); Roberts v. Pa. Dep't of Pub. Welfare, 199 F. Supp. 2d 249, 253-54 (E.D. Pa. 2002). At a minimum, this issue should be fully briefed and considered before the Court takes any action to dismiss the claim.

35

Accordingly, amendment of the Complaint would be futile except for Count Nine, and this Court recommends that further amendment be permitted only as to that count.

### E.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss, ECF No. 22, be granted in part and denied in part as follows:

- GRANTED as to Plaintiff's claims at Count One, Count Two against the Individual Defendants, and Counts Six, Seven, and Eight.  These claims should be dismissed with no leave to amend.

- GRANTED as to Plaintiff's claim at Count Nine with leave to amend.

- DENIED as to Plaintiff's claims at Count Two against the DOC and Counts Three, Four, Five, and Ten.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections within fourteen days, or seventeen days for unregistered ECF Users.  Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right to appeal.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: March _9_, 2026

cc:    The Honorable Stephanie L. Haines
       United States District Judge

       All counsel of record via CM/ECF

       Gerald Funk, EA5247
       SCI-Somerset
       1590 Walters Mill Road
       Somerset, PA 15510-0001